**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
FAITH ANN BAIRD,

                                    Plaintiff,

                    -against-

COMENITY BANK (VICTORIA'S SECRET).,

                                    Defendant.
------------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge:**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/27/2026
```

**26-CV-891 (VSB) (KHP)**

**OPINION AND ORDER**
**ON**
**MOTION TO COMPEL**
**ARBITRATION**

Plaintiff Faith Ann Baird ("Plaintiff") brings this action against Defendant Comenity Bank

("Defendant"), alleging negligence and violations of the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. § 1681 et seq., the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1601 et seq., and New York

General Business Law ("GBL") §§ 349-50.  Defendant has moved to compel Plaintiff to arbitrate

all claims asserted against it pursuant to the parties' contractual agreement, or, in the

alternative, dismiss Plaintiff's claims.[1]  For the reasons set forth below, Defendant's motions to

compel arbitration and stay this action pending arbitration are GRANTED.

<strong>BACKGROUND</strong>

On May 2, 2021, Plaintiff opened a credit card account (the "Account") issued by

Defendant, which was governed by the terms and conditions of the Victoria's Secret credit card

agreement (the "Agreement").  (ECF No. 10-1 ¶ 7; ECF No. 12, at 3)  Defendant asserts that

Plaintiff applied for the Account in person at a Victoria's Secret retail location and provided

personal identifying information, including her name, mailing address, Social Security number,

---

[1] In light of the Court's ruling as to arbitration, it declines to address the merits of Defendant's motion to dismiss.

1

date of birth, telephone number, and a copy of her driver's license.  (ECF No. 10-1 ¶ 7)  Plaintiff contends that, although she requested a copy of the Agreement when she opened the Account, she did not receive one in the store or by mail.  (ECF No. 16 at 3)  Defendant disagrees, asserting that Plaintiff received the Agreement both in the store and by mail.  (ECF No. 10-1 ¶¶ 8-10)  Defendant further argues that its regular practice is to mail a Welcome Kit – which includes a copy of the credit card agreement – to new account holders whenever a new account is opened.  (*Id*. ¶ 10)  Defendant attests that Plaintiff's Victoria's Secret credit card and Welcome Kit were mailed to the billing address she provided and that its business records do not indicate the mailing was returned as undeliverable.  (*Id*.)

A copy of the Agreement, which was provided to the Court, includes a clause which states, in relevant part, as follows:

> **Acceptance**: You accept this Agreement if you use the Account or you do not cancel your Account within 30 days after the delivery of the Agreement. Your signature on any application or solicitation for this Account or other indebtedness on your Account is your signature on this Agreement.  (ECF No. 11-2 at 2)
>
> \*\*\*
>
> **Arbitration**: <u>This Agreement includes an Arbitration Provision with class action and jury trial waivers</u>. You can reject the Arbitration Provision. If you do not, it will be part of this Agreement.  (ECF No. 11-2 at 2) (emphasis in original)

The arbitration provision further provides:

> **C. Arbitration Provision**. **Review this provision carefully. If you do not reject it in accordance with Paragraph C.1, Right to Reject, below, it will be part of this Agreement and will have a substantial impact on the way you or we will resolve any Claim you or we have against each other now or in the future.** (ECF No. 11-2, at 5) (emphasis in original)

\*\*\*

2

**C1. Right to Reject. If you don't want this Arbitration Provision . . . to apply, you may reject it by mailing us a written rejection notice which gives your name and contains a statement that you . . . reject the Arbitration Provision of this Agreement. . . A rejection notice is only effective if it is signed by you . . . and if we receive it within 30 calendar days after the date we first provide you with a credit card agreement or written notice providing you a right to reject this Arbitration Provision. Your rejection of this Arbitration Provision will not affect any other provision of this Agreement or your ability to obtain credit.** (ECF No. 11-2 at 5) (emphasis in original)

\*\*\*

**C3. Covered Claims.** "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program and/or any prior agreement or account. "Claim" includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based on contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). "Claim" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof . . . . (*Id.* at 5)

\*\*\*

**C4. Starting an Arbitration.** Arbitration may be elected by any party with respect to any Claim, even if that party has already initiated a lawsuit with respect to a different claim. Arbitration is started by giving a written demand. (ECF No. 11-2 at 6)

\*\*\*

**C5. Administrator.** "Administrator" means the American Arbitration Association ("AAA"), . . . ; JAMS . . . ; or any other company selected by mutual agreement of the parties. If both AAA and JAMS cannot or will not serve and the parties are unable to select an Administrator by mutual consent, the Administrator will be selected by a court. The arbitrator will be appointed by the Administrator in accordance with the rules of the Administrator.  (ECF No. 11-2 at 6)

\*\*\*

**C6. Court and Jury Trials Prohibited; Other Limitations on Legal Rights. If you or we elect to arbitrate a Claim, you will not have the right to pursue that Claim in court or have a jury decide the Claim. Also, your ability to obtain information from us is more limited in arbitration than in a lawsuit. Other rights that you would have if you went to court may also not be available in arbitration.** (ECF No. 11-2 at 6) (emphasis in original)

\*\*\*

3

**C9. Governing Law**. This Arbitration Provision involves interstate commerce and is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), and not by any state arbitration law. The arbitrator must apply applicable substantive law consistent with the FAA and applicable statutes of limitations and claims of privilege recognized at law. The arbitrator may award any remedy provided by the substantive law that would apply if the action were pending in court (including, without limitation, punitive damages, which shall be governed by the Constitutional standards employed by the courts).  (ECF No. 11-2 at 6)

*** 

Since the Account was opened, multiple purchases were made using Plaintiff's credit card.  (ECF No. 11-3)  Card balances were also paid during that time.  (*Id.*)  In 2022, Plaintiff claims she informed Defendant about fraudulent activity and requested that the Account be closed and investigated. (ECF No. 16, at 3)  Defendant disputes this characterization.  Further purchases and payments were made on the Account through September 2023. (ECF No. 11-3)  A final payment was made on March 19, 2024, which did not cover the full balance of the Account. (*Id.*)  In or around October 2024, the Account was closed and reported as delinquent. (ECF No. 11-1 ¶ 14)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements. *See* 9 U.S.C. § 1, et seq.  It states than an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. § 2.  "Parties may generally shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019).  Although the FAA "embod[ies] [a] national policy favoring

arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), the statute "does not require parties to arbitrate when they have not agreed to do so," *Schnabel v. Trilegiant Corp*. 697, F.3d 110, 118 (2d Cir. 2012); *see also Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 569 (S.D.N.Y. 2009) (citing *Bell v. Cendant Corp.*, 293 F.3d 563, 566–67 (2d Cir. 2002)). The FAA manifests "a 'liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Indeed, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id*. at 24–25

"[D]espite the strong federal policy favoring arbitration, arbitration remains a creature of contract." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). As a result, "before an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties." *Meyer v. Uber Tech's*, 868 F.3d 66, 73 (2d Cir. 2017). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting that state law governs determination of whether parties agreed to arbitrate); *see also* 9 U.S.C. § 2 (an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (same); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (same); *Klein v. AT&T Corp.*, No. 23 Civ. 11038

5

(DEH) (RFT), 2024 WL 3409041, at *3 (S.D.N.Y. July 15, 2024) (same).  Here, the Agreement includes a choice of law provision that states "this Agreement is governed by Delaware and federal law."

Under Delaware law, a contract is formed when "(1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently defined, and (3) the parties exchange legal consideration." *Obsorn ex rel Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

If there is a genuine issue of material fact as to the making of an arbitration agreement, the Court shall proceed to trial on that question. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); 9 U.S.C. § 4.  In the absence of a genuine issue of material fact regarding the formation of the arbitration agreement, the motion to compel must be granted if the dispute falls within the scope of the arbitration agreement.  *Meyer*, 868 F.3d at 74.  Where a court determines it should "compel[] arbitration pursuant to a written agreement," the FAA mandates "that the action be stayed pending arbitration." *Espinosa v. SNAP Logistics Corp.*, No. 17 Civ. 6383 (AT), 2018 WL 9563311 at *6 (S.D.N.Y. Apr. 3, 2018) (citing 9 U.S.C. § 3).

The Court also notes that it is "obligated to afford special solicitude to pro se litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  This concept protects the rights of pro se litigants who are "likely to forfeit important rights through inadvertence if he is not afforded some degree of protection" due to a lack of "legal training and experience." *Id*.  Special solicitude can come in different forms, but most often takes the form "of liberally construing pleadings, moving papers, and appellate briefs." *Id*.; *see also Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir. 1980); *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001); *Ruotolo v. IRS*,

28 F.3d 6, 8 (2d Cir. 1994); *Ortiz v. Local 32BJ*, No. 07 Civ. 8030 (LTS) (KNF) 2008 WL 2604810, at *3 (S.D.N.Y. June 25, 2008).  Plaintiff's opposition to Defendant's motion to compel has been so construed in resolving the instant motion.

**DISCUSSION**

**A.  Agreement to Arbitrate**

Here, little is in dispute.  Plaintiff does not contest that the agreement submitted by Defendant contains a valid and binding arbitration provision, or that its terms would require arbitration of the claims asserted in this action.  Nor does Plaintiff dispute that she received the credit card issued by Defendant.  Rather, she argues that she never received the Agreement and therefore cannot be bound by its terms.  Defendant contends, in response, that there is adequate proof of mailing and that continued charges and payments on the account by Plaintiff constitute acceptance of the arbitration agreement under Delaware law.  Therefore, the Court must first determine whether plaintiff received the Agreement such that it constitutes an offer that she could accept.

Proof that a document was sent in accordance with an organization's standard mailing procedures raises a presumption that it was received by the addressee.  *See Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 463 (S.D.N.Y. 2004) (applying Delaware law and finding against a plaintiff making the argument that he never received an arbitration agreement, noting that "[i]t is well settled that evidence of proper mailing gives rise to a rebuttable presumption of receipt."); *Mount Vernon Fire Ins. Co. v. E. Side Renaissance Assocs.*, 893 F. Supp. 242, 245 (S.D.N.Y. 1995) (collecting cases); *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir. 1985) (same).  "Actual receipt need not be proven."  *Kurz*, 319 F. Supp. 2d at 463.

Indeed, proof of receipt can be established when the credit card company presents circumstantial evidence that it mailed the card agreement to the borrower. *See Fields v. Howe,* No. IP–01–1036–C–B/S, 2002 WL 418011, at *5–6 (S.D. Ind. Mar. 14, 2002) (applying Delaware law and crediting vice president's testimony about mailing procedure); *Velez v. Credit One Bank*, No. 15 Civ. 4752 (PKC), 2016 WL 324963 at *3 (E.D.N.Y. Jan. 25, 2016) (affidavit establishing that the defendant mailed the plaintiff the card, along with a copy of the [Agreement] was "compelling circumstantial evidence" that the defendant sent the plaintiff the cardholder agreement); *but see Katsnelson v. Citibank Nat'l Ass'n,* 691 F.Supp.3d 667, 671 (E.D.N.Y. 2023) (finding that there still existed a dispute of fact regarding whether the card agreement was received when Citibank did not provide a declaration from someone with knowledge of their business practices such that they could "aver that the customary practice [ ] was to include the Agreement with every credit card.")

Defendant has submitted a declaration of a paralegal with Bread Financial Payments Inc., the parent company of Defendant.  The declarant, based on her personal knowledge and a review of corporate records maintained in the ordinary course of business, attests that Defendant's regular practice is to mail the credit card along with a Welcome Kit that includes the Agreement, that this practice was applied to Plaintiff's Account, and that the mailing was not returned as undeliverable (as it would be if the account holder never received the credit card and Welcome Kit package).  (ECF No. 11-1 ¶¶ 9-10, 14; ECF No. 11-3).  All Plaintiff has said is she did not remember receiving the Agreement.  Moreover, this statement is made in a brief, not in a sworn statement.  This is insufficient to create a material dispute as to whether the Agreement was sent to her.  *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 597 F.3d 84, 92 (2d

8

Cir. 2010) (finding that the mailbox rule applies when "the record establishes office procedures, followed in the regular course of business, pursuant to which notices have been addressed and mailed."); *Windom v. William C. Ungerer, W.C.*, 903 A.2d 276, 282 (Del. 2006) ("There is a presumption that mailed matter, correctly addressed, stamped and mailed, was received by the party to whom it was addressed.") (internal quotation marks, emphasis, and citations omitted); *Reagan Nat. Advert., Inc. v. Unemployment Ins. Appeal Bd. of State,* No. 89A-SE-1, 1990 WL 105632, at *2-3 (Del. Super. Ct. July 19, 1990) (finding that direct testimony from a Claims Deputy that notice was mailed is sufficient, despite any documentary evidence of mailing, to establish that notice was properly sent to a party); *see also* Del. R. Evid. 406 ("Evidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the habit or routine practice.")

Having determined that the Agreement was communicated to Plaintiff, the Court now turns to whether Plaintiff accepted its terms. Delaware law provides that use of a credit card by the intended recipient constitutes acceptance of the credit card agreement. 6 Del. Code § 2542 ("Use of the credit card by the intended recipient shall constitute acceptance.") Moreover, the Agreement's own language mirrors this law, providing that Plaintiff accepted its terms by using the credit card or by failing to cancel within 30 days of delivery. (ECF No. 11-2, at 2) Delaware courts routinely enforce acceptance mechanisms of this type. *See, e.g.*, *Grasso v. First USA Bank*, 713 A.2d 304, 308-09 (Del. Super. Ct. 1998). In *Grasso*, the Delaware Superior Court enforced a similar agreement, reasoning that acceptance was voluntary. *Id*. at 309. The Court found that cardholder was not required to use the card and could have declined without penalty or obligation. *Id*. Her choice to use it, therefore, objectively manifested acceptance to

9

its terms.  *Id*.   Similarly, by Plaintiff's own admission, she chose to use the Account for at least two years, make payments on it for at least three years, and did not cancel within 30 days.  That conduct constitutes acceptance of the "Agreement."

With respect to the arbitration provision specifically, the same reasoning applies with equal force.  Here, the arbitration provision was conspicuously written in that its key provisions are either bolded or underlined.  The Agreement further provided Plaintiff an explicit opportunity to opt-out of the arbitration provision within 30 days without affecting any other terms of the Agreement or her ability to obtain credit.  (ECF No. 11-2, at 3, 5)  That opt-out provision appears twice in the Agreement, once in the general terms and again within the arbitration provision itself.  (ECF No. 11-2, at 3, 5)  This reflects the circumstances *Grasso* found dispositive. Plaintiff had a meaningful opportunity to decline a specific term without penalty, and she did not exercise it.  *Id*.  Her failure to opt-out of the arbitration provision, combined with her continued use of the Account, manifests acceptance of the arbitration provision on the same basis as the Agreement's other terms.

In this case, all the requisite elements of contractual formation under Delaware law have been met.  The parties intended that the contract would bind them when Defendant mailed the offer to Plaintiff and Plaintiff accepted its terms via use of the Account and/or failure to opt-out. The terms of the contract are sufficiently definite.  "A contract is sufficiently definite and certain to be enforceable if the court can—based upon the agreement's terms and applying proper rules of construction and principles of equity—ascertain what the parties agreed to do." *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1228 (Del. 2018).  Here, the Agreement clearly sets forth dispute resolution procedures governing the Account, providing the Court with an

10

adequate basis to ascertain what the parties agreed to and how to enforce those terms. *See Grasso*, 713 A.2d at 308 (cardholder agreement setting forth terms of credit account is sufficiently definite to constitute an enforceable contract). Finally, the parties exchanged legal consideration when Defendant extended a line of credit to Plaintiff, and Plaintiff, in turn, promised to repay any amounts charged to the Account according to the Agreement's terms.[2] *See id.* at 308-09 (recognizing the extension of credit in exchange for the cardholder's promise to repay as sufficient consideration).

Under the FAA, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal citation and quotation omitted). Delaware courts apply an identical "presumption of arbitrability," that can be overcome "only if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *SBC Interactive, Inc. v. Corporate Media Partners*, No. 15987, 1997 WL 810008, at *3 (Del. Ch. Ct. Dec. 29, 1997). Insofar as the Court finds that Plaintiff received and accepted the terms of the Agreement, for consideration, arbitration must be compelled by this Court.

## B. Scope of Agreement

The arbitration provision provides that the AAA will be the "Administrator" of any arbitration conducted between the parties. (ECF No. 11-2 at 6) This suggests that AAA arbitration rules apply. *See, e.g., L. Offs. of Joseph L. Manson III v. Keiko Aoki*, No. 19 Civ. 4392

---

[2] The Account agreement states, in relevant part, that "You agree to use your Account in accordance with this Agreement. You agree to pay us for all amounts due on your Account, including charges made by Authorized Users." (ECF No. 11-2 at 3)

11

(LTS) (GWG), 2020 WL 767466, at *4 (S.D.N.Y. Jan. 3, 2020) (noting that the arbitration clause

invoked AAA arbitration rules by specifying that disputes arising under the agreement must be

arbitrated "under the auspices of the American Arbitration Association"); *see also Idea Nuova,*

*Inc. v. GM Licensing Grp., Inc.,* 617 F.3d 177, 181 (2d Cir. 2010).  AAA Commercial Arbitration

Rule 7(a) provides that "[t]he arbitrator shall have the power to rule on his or her own

jurisdiction, including any objections with respect to the existence, scope, or validity of the

arbitration agreement or to the arbitrability of any claim or counterclaim."  Rule R-7(a),

AAA, 2018 WL 2117639; *see also* www.adr.org.  Accordingly, the Court must leave it to the

arbitrator to decide whether the present dispute falls within the scope of that agreement.[3]

## C.  Staying the Action Pending Arbitration

Where a court compels arbitration pursuant to a written agreement, the FAA mandates

that the action be stayed pending arbitration if either party so requests.  *Shehadeh v. Horizon*

*Pharma USA, Inc.*, 2021 WL 4176254, at *6 (S.D.N.Y Sept. 14, 2021) (citing 9 U.S.C. § 3).  Based

on the above analysis and Defendant's request (ECF No. 12 at 1), a stay in this action pending

arbitration is warranted.  9 U.S.C. § 3; *see also Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir.

2015); *Spurlock v. Thompson Reuters Am. Corp.*, No. 20 Civ. 9135 (JPC), 2022 WL 604066, at *6-7

(S.D.N.Y. Mar. 1, 2022) (staying action pending arbitration because "[a] stay may also benefit the

parties by avoiding duplicative discovery in this action and the Arbitration, and limiting the

scope of discovery in the event some or all of Plaintiff's claims are resolved in the Arbitration.").

---

[3] "[A]rbitration may be ordered to proceed only within the judicial district in which the petition to compel has been filed."  *Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 315 (E.D.N.Y. 2001);  9 U.S.C.S. § 4 (providing that any proceeding compelled under its authority "shall be within the district in which the petition for an order directing such arbitration is filed.").  Insofar as the Agreement states that "[a]ny arbitration hearing that you attend must take place at a location reasonably convenient to you," (ECF No. 11-2 at 6) the parties are on notice that the Court may compel arbitration only if that arbitration is scheduled to occur within the Southern District of New York.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to compel arbitration is GRANTED and the case is stayed pending the disposition of the arbitration proceedings.  The parties shall provide the Court updates every 90 days on the status of the arbitration.

**<u>The Clerk of Court is respectfully directed to terminate the motion at ECF No. 11.</u>**

    **SO ORDERED.**

Dated: April 27, 2026
      New York, New York

_____
    Katharine H. Parker
    United States Magistrate Judge